(134 So. 15)

### BURTON v. JOHNSON et al.

#### 7 Div. 22.

Supreme Court of Alabama.

March 19, 1931.

Rehearing Denied April 23, 1931.

Culli, Hunt & Culli, of Gadsden, for appellant.

E. O. McCord & Son, of Gadsden, for appellees.

BOULDIN, J.

In count 1 of the complaint, on which the case went to the jury, plaintiffs alleged and assumed the burden of proof as to the following material facts: (1) That plaintiffs' residence lot fronts on a public common or portion of Sixth street in the city of Gadsden. (2) That defendant, by filling in said common with earth and gravel in front of plaintiffs' property, worked injury to and reduction in the value of the same.

Two elements of damages are alleged: (a) Diverting the flow of surface waters from the street or common onto and over plaintiffs' lands, and (b) cutting off convenient means of ingress and egress.

The main issue of law or fact relates to the status of a parcel of land referred to in evidence as a triangular space, but as affects these parties is a trapezoid.

Plaintiffs' residence lot, as now improved, fronts south on same, and, according to plaintiffs' contention, defendant's lot, known as the Hood lot, fronts west on same. Defendant claims his lot extends alongside and past plaintiffs' lot to Sixth street as now paved, and includes the parcel in dispute. The situation is best shown by the recorded map or plat of Crocheron central addition, and map made by Lee Engineering Company, both in the record.

Defendant's deed, made by Mrs. Hood in 1913, describes his lot thus: "Commencing on the East side of Sixth Street 192 feet from the Original Survey of the Boundary line of the Town of Gadsden running 96 feet parallel with Sixth Street; thence running East to original back line 259 feet, thence parallel with Original line 96 feet; thence running West 259 feet to starting point on Sixth Street, which property is located in Gadsden, Etowah County, Alabama, and which is the property occupied by grantor as home."

The same description has obtained from the time it was carved out of the body of lands and sold in 1890.

The evidence, without conflict, we believe, tends to show that Sixth street, so far as actually maintained and used by public travel, has always run as now, bearing westward, and leaving the parcel in controversy on the east side thereof. Defendant, therefore, insists that by these conveyances his line follows the east line of the street, includes this parcel as matter of law; and that he was entitled to the affirmative charge for failure to prove the averment that the parcel is part of the street or common.

Plaintiffs, to the contrary, insist that the description of defendant's lot shows an actual survey, a lot between parallel lines of actual measurement.

Evidence tends to show the back line, the eastern boundary of the lot, has been known and marked from the beginning. Certain it is that to extend defendant's lot as he claims would extend his north line some 95 feet, his south line 50 feet, his western boundary would not be parallel with his eastern boundary, and instead of 96 feet would be some 105.4 feet.

Plaintiffs insist in brief that certain marks and improvements on the ground, which was viewed by the jury, indicate that, when this and other adjoining lots were laid out and sold, it was contemplated that Sixth street should extend north along their west front, and possession was taken and held to this common as part of Sixth street.

Without dealing with the presumptions to be indulged, or the probative force of these circumstances standing alone, certain subsequent events are not to be ignored.

■■ In June, 1907, W. A. Crocheron, who had succeeded to the body of lands, platted and put to record a map of Crocheron central addition. By this map the parcel in question is expressly shown as an extension of Sixth street. Plaintiffs' lot, No. 2 of this addition, purchased from Mr. Crocheron, fronts on such street, as does the property of defendant.

The platting and sale of lots with reference to such map was per se a dedication of this parcel to public use in so far as the title of Crocheron went.

There is some evidence that plaintiffs had changed the front of their residence to face on this common when defendant purchased his lot in March, 1912. It further appears that, some uncertainty then existing as to the status of this parcel, Mr. Crocheron obtained a quitclaim deed from Mr. McCarver, the common source of title, covering definitely the property to the street line, and thereupon executed a dedication deed to this parcel. This defendant, it appears, had some connection with this transaction, and at the instance of his counsel put the dedication deed to record along with his deed. Again in 1915 defendant purchased a 4-foot strip from an adjoining owner along the south side of his lot. This deed shows a survey to locate this 4-foot strip, and locates the southwest corner of the Hood-Burton lot at a point 259.2 feet west from the back line, which would place it some 50 feet east of the point now claimed.

The evidence of dedication thus recognized in connection with evidence of user as a public common made a case for the jury on that issue.

■ The apparently conflicting calls in the description of defendant's lot made it a jury question to ascertain, in the light of all the facts, the true boundaries of defendant's lot as originally laid out. The affirmative charge was properly refused.

■ The fact and extent of damages was for the jury under the evidence, and their own observation of the premises.

The rulings of the trial court were in keeping with the above. We see no need for further discussion. We find no error to reverse.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.